**BRIAN G. WOLF (SBN 135257)**
bwolf@lavelysinger.com
**EVAN N. SPIEGEL (SBN 198071)**
espiegel@lavelysinger.com
**CESIE C. ALVAREZ (SBN 355204)**
calvarez@lavelysinger.com
**LAVELY & SINGER P.C.**
2049 Century Park East, Suite 2400
Los Angeles, California 90067-2906
Tel:    (310) 556-3501

Attorneys for Plaintiffs
ROBBINS RESEARCH INTERNATIONAL, INC.,
and TR LEGACY, LLC

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Robbins Research International, Inc.**, a corporation; **TR Legacy, LLC**, a limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>**InnoLeap AI LLC**, a limited liability company; **Mira Muse LLC**, a limited liability company; and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO.: 25cv1637-GPC-DEB<br>Hon. Gonzalo P. Curiel<br><br>**NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS INNOLEAP AI LLC AND MIRA MUSE LLC; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**DATE:    November 21, 2025**<br>**TIME:    1:30 p.m.**<br>**PLACE:    USDC, Carter/Keep Courthouse**<br>**Courtroom 12A**<br>**333 West Broadway**<br>**San Diego, CA 92101** |

| | |
|---|---|
| Complaint Filed: | June 26, 2025 |
| Innoleap AI LLC | |
| Service Effective: | July 1, 2025 |
| L/D to Respond: | July 22, 2025 |
| Mira Muse LLC | |
| Service Effective: | June 30, 2025 |
| L/D to Respond: | July 21, 2025 |
| Defaults Entered: | Aug 1, 2025 |

1470-380

1  **TO THE COURT AND ALL PARTIES APPEARING HEREIN:**

2      **PLEASE TAKE NOTICE** that, on November 21, 2025, at the above-

3  entitled Court, located at USDC – Carter/Keep Courthouse, 333 West Broadway

4  San Diego, CA 92101, Courtroom 12A, Plaintiffs ROBBINS RESEARCH

5  INTERNATIONAL, INC. ("RRI") and TR LEGACY, LLC ("TRL") (RRI and

6  TRL collectively referred to as "Plaintiffs"), will submit the within Motion for

7  Default Judgment (the "Motion"), pursuant to Federal Rules of Civil Procedure

8  ("F.R.C.P.") Rule 55(b)(2), and USDC-SD Local Civil Rule 55.1, seeking a default

9  judgment, joint and severally, against Defendant INNOLEAP AI LLC

10  ("InnoLeap") and Defendant MIRA MUSE LLC ("Mira Muse") (collectively,

11  "Defendants").

12      Plaintiffs seek an order from this Court:

13  (1)  For permanent injunctions enjoining and restraining Defendants, their

14      agents, employees, representatives, partners, joint venturers, online store

15      and website platform and/or host providers, and anyone acting on behalf

16      of, or in concert with Defendants, from:

17          a.  copying, reproducing, manufacturing, shipping, delivering, selling,

18             distributing, marketing, displaying, advertising or promoting, any

19             product and/or service that incorporates or is marketed in

20             conjunction with or by using, displaying or embodying any of the

21             Plaintiffs' Marks;

22          b.  copying, reproducing, manufacturing, shipping, delivering, selling,

23             distributing, marketing, displaying, advertising or promoting, any

24             product and/or service that incorporates or is marketed in

25             conjunction with or by using, displaying or embodying the

26             ROBBINS Mark or Robbins' name, image, likeness and/or voice;

27          c.  representing or implying, directly or indirectly, to customers, or any

28             potential customers or online users/viewers of Defendants' Website

1

that Defendants' products originate with or are sponsored, endorsed, or licensed by, or are otherwise associated or affiliated with, Plaintiffs and/or Robbins, using, reproducing, or otherwise exploiting Plaintiffs' trademarks, service marks, names, images, likenesses, voices, and personas, including but not limited to the "ANTHONY ROBBINS" and "TONY ROBBINS" marks, the Robbins Brand, and the Robbins NIL, in connection with the promotion, distribution, or sale of any products or services; and

(2) Ordering Defendants to disable, remove and destroy – including, but not limited, from, on or available through their Website and any apps, stores, social media and/or any other sites, outlets or platforms that they own, operate or control – all infringing chatbots, chatbot replicas, websites, website urls and links, website listings, digital files, promotional materials, and any other content that incorporates or misappropriates the Robbins Marks, the Robbins Brand, or Robbins' NIL;

(3) Awarding Plaintiffs damages against Defendants, joint and severally, in the form of compensatory damages according to proof, including lost revenues, diverted customers, and harm to goodwill and brand equity, in an amount no less than Fifty-Five Million Dollars ($55,000,000), *or, in the alternative*, in the form of statutory damages in the amount of Six Million Dollars ($6,000,000) ($2,000,000 per infringed mark, x3 USP&TO registered marks), pursuant to 15 U.S.C. § 1117(c) and/or CA Civil Code §§ 3344, 3344.1, *plus* awarding treble damages of such damages awarded pursuant to 15 U.S.C. § 1117(a) for Defendant's willful infringement;

(4) Ordering an accounting of all revenues, proceeds, and profits generated from Defendants' unauthorized use of Plaintiffs' intellectual property, publicity rights, and trademarks;

(5) Ordering all profits realized by Defendants as a result of their infringing conduct disgorged and awarded to Plaintiffs; and

2

(6) Awarding Plaintiffs reasonable attorneys' fees and costs, pursuant to 15 U.S.C. § 1117(a) and applicable state law, in the amount of $146,675.

This Motion is made on the grounds that Federal Rule of Civil Procedure 55(b) authorizes the Court to enter a default judgment following the Clerk's entry of default under Rule 55(a). *See* Fed. R. Civ. P. 55(b)(2). Here, the Clerk entered default against Defendants on August 1, 2025. *See* ECF No. 10. Plaintiffs have satisfied the requirements for entry of default judgment because: (i) Defendants were each, respectively, properly served with the Summons and Complaint, and default was duly entered for their respective failures to appear; (ii) Defendants InnoLeap and Mira Muse are each a corporate entity and thus not a minor or incompetent person; (iii) Defendants are each a corporate entity and therefore not subject to the Servicemembers Civil Relief Act, 50 U.S.C. § 521; and (iv) Defendants have, each respectively, not appeared in this action; accordingly, no notice of this application is required under Fed. R. Civ. P. 55(b)(2). Each of these elements is met here. Accordingly, entry of default judgment is warranted.

The Motion is made and based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the accompanying Declarations of Evan N. Spiegel, Bruce Levine and Yogesh Babla, and the attached exhibits, files and records in this matter, and on such other evidence and argument as the Court may desire to consider in connection with this Motion.

Dated:  September 3, 2025

LAVELY & SINGER PC
BRIAN G. WOLF
EVAN N. SPIEGEL
CESIE C. ALVAREZ

By: _____*/s/ Evan Spiegel*_____
EVAN N. SPIEGEL
Attorneys for Plaintiffs
Robbins Research International, Inc.,
and TR Legacy, LLC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

**PAGE(S)**

I.    INTRODUCTION.................................................................1

II.   BRIEF STATEMENT OF FACTS ...............................................3

III.  LEGAL ARGUMENT ..............................................................5

    A.    The Court Has Personal Jurisdiction Over Defendants .......................5

    B.    Default Judgment Is Proper Against Defendants Based On Their Non-Appearances ........................................................7

        1.    Defendants Were Each Served With the Summons and Complaint and Default Was Entered. .................................8

        2.    Defendant(s) Is Not A Minor, Not Incompetent, And Not in Military Service. .......................................8

        3.    Defendant Has Failed to Appear and Shall Receive Notice of the Amounts Requested. ...........................9

    C.    THE *EITEL* FACTORS FAVOR ENTERING DEFUALT JUDGMENT AGAINST DEFENDANTS ...........................................9

        1.    Plaintiffs Will Be Prejudiced If Default Judgment Is Not Entered. .................................................9

        2.    Plaintiffs' Claims Are Meritorious and Are Sufficiently Pled. ...............................................11

            a)    Plaintiffs Adequately Alleged All Elements Of Their Trademark Infringement and False Designation of Origin Claims. .........................11

            b)    Plaintiffs Adequately Alleged All Elements of Their Statutory and Common Law Misappropriation of Name and Likeness Claims....................................................13

            c)    Plaintiffs Adequately Alleged All Elements of Their Common Law Unfair Competition Claim .......................................................14

i

d)   The Damages Sought by Plaintiffs Favor Default Judgment ............................................................ 15

e)   No Dispute Exists As To Material Facts ...................... 17

3.   Defendants' Failure to Respond Is Not Attributable to Excusable Neglect ............................................. 18

4.   The Policy Favoring a Decision on the Merits. ......................... 19

IV.   PLAINTIFFS ARE ENTITLED TO THE RELIEF SOUGHT ................. 20

A.   Injunctive Relief .................................................................. 20

B.   Damages ............................................................................. 22

C.   An Accounting and Disgorgement of Profits .................................. 24

D.   Attorney's Fees .................................................................. 25

V.   CONCLUSION ..................................................................... 25

ii

# TABLE OF AUTHORITIES

**PAGE(S)**

## Cases

*Abdul-Jabbar v. Gen. Motors Corp.*,
    85 F.3d 407 (9th Cir. 1996) ................................................................. 14

*Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.*,
    944 F.2d 1446 (9th Cir.1991) ............................................................. 15

*ACS Recovery Servs., Inc. v. Kaplan*,
    No. CV 09-01304 JSW, 2010 WL 144816 (N.D. Cal. Jan. 11, 2010) ................................................................................................ 16

*Adobe Sys. Inc. v. Kern*,
    No. C 09-1076 CW (JL), 2009 WL 5218005 (N.D. Cal. Nov. 24, 2009) ................................................................................................ 18

*Aldabe v. Aldabe*,
    616 F.2d 1089 (9th Cir. 1980) ........................................................... 7, 9

*Amini Innovation Corp. v. KTY Int'l Mktg.*,
    768 F. Supp. 2d 1049 (C.D. Cal. 2011) ..................................... 10, 19, 20

*Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*,
    174 F.3d 1036 (9th Cir. 1999) ........................................................... 12

*Cal. Sec. Cans v. Union Safe Deposit Bank*,
    238 F. Supp. 2d 1137 (E.D. Cal. 2002) ......................................... 10, 15

*Calder v. Jones*,
    465 U.S. 783 (1984) ........................................................................ 5, 6

*Century 21 Real Estate Corp. v. Sandlin*,
    846 F.2d 1175 (9th Cir.1988) ........................................................... 14

*Coach Servs., Inc. v. YNM, Inc.*,
    No. CV 10–02326 JST, 2011 WL 1752091 (C.D. Cal. 2011) ............ 11, 12

*Craigslist, Inc. v. Naturemarket, Inc.*,
    694 F. Supp. 2d 1039 (N.D. Cal. 2010) ......................................... 17, 23

*Eitel v. McCool*,
   782 F.2d 1470 (9th Cir. 1986): (1) ..........................................................*passim*

*Elektra Ent. Grp. Inc. v. Crawford*,
   226 F.R.D. 388 (C.D. Cal. 2005) ...................................................................10

*Friend v. H.A. Friend & Co.*,
   416 F.2d 526 (9th Cir.1969) ...........................................................................24

*Geddes v. United Fin. Grp.*,
   559 F.2d 557 (9th Cir. 1977) ...................................................................11, 19

*Jackson v. Sturkie*,
   255 F.Supp.2d 1096 (N.D. Cal.2003)............................................................20

*Landstar Ranger, Inc. v. Parth Enters., Inc.*,
   725 F. Supp. 2d at 920..............................................................................9, 11

*Lindy Pen Co. v. Bic Pen Corp.*,
   982 F.2d 1400 (9th Cir. 1993).......................................................................25

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
   647 F.3d 1218 (9th Cir. 2011) .........................................................................6

*Maxwell v. Dolezal*,
   231 Cal.App.4th 93 (2014)............................................................................13

*Panavision Int'l, L.P. v. Toeppen*,
   141 F.3d 1316 (9th Cir. 1998) .........................................................................7

*PepsiCo Inc. v. Cal. Security Cans*,
   238 F. Supp. 2d 1172 (C.D. Cal. 2002)......................................................7, 19

*PepsiCo, Inc. v. Distribuidora La Matagalpa, Inc.*,
   510 F. Supp. 2d 1110 (S.D. Fla. 2007)...........................................................10

*PepsiCo, Inc. v. Triunfo-Mex, Inc.*,
   189 F.R.D. 431 (C.D. Cal. 1999) .....................................................................9

*Philip Morris USA, Inc. v. Castworld Prod., Inc.*,
   219 F.R.D. 494 (C.D. Cal. 2003) .............................................................17, 23

*Phillip Morris USA Inc. v. Shalabi*,
   352 F.Supp.2d 1067 (C.D. Cal.2004).............................................................12

iv

*Picot v. Weston*,
  780 F.3d 1206 (9th Cir. 2015)..................................................................5, 6

*Playboy Enters., Inc. v. Baccarat Clothing Co., Inc.*,
  692 F.2d 1272 (9th Cir. 1982)......................................................................25

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ....................................................................5, 6

*Shanghai Automation Instrument Co., Ltd. v. Kuei*,
  194 F.Supp.2d 995 (N.D. Cal.2001)...........................................................19

*Simplehuman, LLC v. Volume Distributors, Inc.*,
  No. LACV2302219JAKASX, 2024 WL 1813511 (C.D. Cal. Feb.
  15, 2024)........................................................................................................14

*Taylor Made Golf Co. v. Carsten Sports, Ltd.*,
  175 F.R.D. 658 (S.D. Cal. 1997)..................................................................25

*In re Tuli*,
  172 F.3d 707 (9th Cir. 1999)..........................................................................5

*Twentieth Century Fox Film Corp. v. Streeter*,
  438 F. Supp. 2d 1065 (D. Ariz. 2006) ...........................................................7

*Wecosign, Inc. v. IFG Holdings, Inc.*,
  845 F. Supp. 2d 1072 (C.D. Cal. 2012).......................................................18

*Williams-Sonoma, Inc. v. Friendfinder, Inc.*,
  2007 WL 4973848 (N.D. Cal. 2007)............................................................18

**Statutes**

15 U.S.C. § 1114(1)(a) and (b) .......................................................................11

15 U.S.C. § 1116(a) .........................................................................................20

15 U.S.C. § 1117(a) ....................................................................3, 16, 22, 24, 25

15 U.S.C. § 1117(b) .........................................................................................23

15 U.S.C. § 1117(c) ......................................................................16, 17, 22, 23

15 U.S.C. § 1125(a) .........................................................................................11

15 U.S.C. § 1125(c) .........................................................................................20

v

1

17 U.S.C. § 502...................................................................................20

2

17 U.S.C. § 505...................................................................................25

3

Cal. Civ. Code § 3344.............................................11, 13, 16, 17, 22, 23

4

Lanham Act ..................................................................................*passim*

5

6

Servicemembers Civil Relief Act, 50 U.S.C. § 521 ...........................7, 8

7

Soldiers and Sailors Relief Act of 1940 ..............................................7

8

Under the Lanham Act.........................................................................23

9

**Other Authorities**

10

F.R.C.P. 8(b)......................................................................................12

11

F.R.C.P. 55..............................................................................7, 8, 9, 12

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT          **25cv01637**

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3        Plaintiffs Robbins Research International, Inc. ("RRI") and TR Legacy, LLC

4    ("TRL") (RRI and TRL collectively referred to as "Plaintiffs"), are the exclusive

5    owners of intellectual property, proprietary materials, and trademarks featuring

6    international best-selling author, award-winning speaker, and performance coach,

7    Anthony "Tony" Robbins ("Robbins"). Defendants InnoLeap AI LLC

8    ("InnoLeap") and Mira Muse LLC ("Mira Muse") (collectively, "Defendants")

9    have been and are engaged, jointly, in the intentional infringement and

10   misappropriation of Plaintiffs' rights by creating, promoting, and distributing

11   unauthorized AI chatbot replicas of Robbins through their jointly owned and

12   operated subscription-based website, <www.yeschat.ai> (Defendants' "Website").

13       Defendants' Website offers over 10,000 AI chatbots trained to mimic specific

14   personas. Among these, Defendants created and offer multiple chatbot replicas

15   labeled (11 currently identified) with Robbins' name and designed to impersonate

16   his voice, likeness, style, and proprietary coaching methods. Defendants' conduct

17   goes beyond mere reference: their AI chatbots masquerade as Robbins, respond to

18   user questions on core topics central to Robbins' teachings, and deliver advice in

19   Robbins' signature style and materials, thereby diverting consumers from Plaintiffs'

20   legitimate seminars, courses, and licensed content.

21       Defendants have no license, consent, or authorization to use Robbins' name,

22   image, likeness, or the registered "ANTHONY ROBBINS" and "TONY

23   ROBBINS" trademarks owned by Plaintiffs (the Robbins "Marks"). Nonetheless,

24   they continue to operate their Website for profit, utilizing three Robbins' Marks,

25   despite formal cease-and-desist demands. Defendants' conduct constitutes, among

26   but not limited to other unlawful conduct, willful and ongoing violations of

27   Plaintiffs' statutory and common law rights of publicity, trademark infringement

28   under the Lanham Act, and unfair competition under California law.

1

Defendants were each properly served with the Summons and Complaint in this action and each failed to respond. As such, the Court entered default against both Defendants on August 1, 2025. *See* ECF No. 10. Plaintiffs, by way of this Motion, seek a default judgment against Defendants, and an order from this Court:

(1)  For preliminary and permanent injunctions, including but not limited to, *as more fully set forth herein below* (in Section IV.A), enjoining and restraining Defendants, and anyone acting on behalf of, or in concert with Defendants, from, selling, distributing, marketing, displaying, advertising or promoting, any product and/or service that incorporates or is marketed in conjunction with or by using, displaying or embodying (i) any of the Plaintiffs' Marks, and/or (ii) the Robbins' NIL; and from (iii) representing or implying that Defendants' products and/or service originate with or are sponsored, endorsed, or licensed by, or are otherwise associated or affiliated with, Plaintiffs and/or Robbins, and from (iv) using or otherwise exploiting the Robbins Marks, the Robbins Brand, and/or Robbins' NIL, in connection with the promotion, distribution, or sale of any chatbot replicas and/or any products and/or services;[1]

(2) Requiring Defendants to remove and destroy -- including but not limited to, from, on or available through their Website and any apps, stores, social media and/or any other sites, outlets or platforms that they own, operate or control -- all infringing chatbots, chatbot replicas, websites, website urls and links, website listings, digital files, promotional materials, and any other content that incorporates or misappropriates the Robbins Marks, the Robbins Brand, or Robbins' NIL;

---

[1] As used herein, Robbins' "NIL" refers specifically to the Anthony "Tony" Robbins' name, image, likeness, voice, and persona. As used herein, the "Robbins Brand" refers broadly to the Anthony Robbins' intellectual property and proprietary rights, including (a) the federally registered Marks of "ANTHONY ROBBINS" and "TONY ROBBINS", (b) federally registered copyrights and trademarks in programs, courses, seminar materials, audio-visual works, literary materials, and coaching systems, and (c) Robbins' NIL.

(3) Awarding Plaintiffs damages against Defendants, joint and severally, in the form of compensatory damages according to proof, including lost revenues, diverted customers, and harm to goodwill and brand equity, in an amount no less than Fifty-Five Million Dollars ($55,000,000) (calculated at $5,000,000 FMV per infringing Robbins AI Chatbot replica, x11 distinct Chatbot replicas), *or, in the alternative*, in the form of statutory damages in the amount of Six Million Dollars ($6,000,000) (calculated at $2,000,000 per infringed mark, x3 USP&TO registered marks), *plus* awarding treble damages of such damages awarded;

(4) Ordering an accounting of all revenues, proceeds, and profits generated from Defendants' unauthorized use of Plaintiffs' intellectual property;

(5) Ordering all profits realized by Defendants as a result of their infringing conduct disgorged and awarded to Plaintiffs, plus treble damages thereon; and

(6) Awarding Plaintiffs reasonable attorneys' fees and costs in the amount of $146,675, pursuant to 15 U.S.C. § 1117(a) and applicable state law.

## II.    BRIEF STATEMENT OF FACTS

Plaintiffs are the exclusive owners of intellectual property, publicity rights, and trademarks associated with Robbins -- international best-selling author, speaker, and peak performance coach and personal and professional development speaker. Compl. ¶ 25. Through licenses from Robbins, RRI and TRL control the Robbins Brand, including registered trademarks, copyrighted materials, and proprietary coaching frameworks. Compl. ¶ 3. See also, Declarations of Bruce Levine ("Levine Decl."), ¶¶1-7, and Yogesh Babla ("Babla Decl."), ¶¶1-3.

Plaintiffs' intellectual property includes numerous federally registered copyrights and trademarks in programs, courses, seminar materials, audio-visual works, literary materials, coaching systems, and the Robbins' Marks. Compl. ¶¶ 27-34. These rights, together with Robbins' name, image, likeness, voice, and persona (collectively, "NIL"), are widely recognized, distinctive, and commercially valuable. Compl. ¶¶ 32, 86; and see, Levine Decl., ¶¶4-7; Babla Decl., ¶3.

3

1    RRI distributes its products and services through authorized channels,
2    including the official website at <TonyRobbins.com>. Compl. ¶ 34. Among other
3    offerings, RRI itself has developed an authorized a "Tony Robbins AI" tool,
4    demonstrating the ongoing innovation and protection of Robbins' brand in the
5    valuable and emerging AI space. *See id;* and see, Babla Decl., ¶¶4-5, 9-10.

6    Defendants jointly own and operate the commercial website
7    <www.YesChat.ai> (the "Website"), an online platform offering access to over
8    200,000 AI chatbot replicas, or "GPTs." Compl. ¶ 35. Defendants' business model
9    monetizes these chatbots through subscription based access tiers marketed at $8,
10   $16, and $40 per month.  Compl. ¶¶  36, 38. Among these offerings, Defendants
11   created and promoted at least eleven GPTs designed to impersonate Robbins, and
12   offer his services. Compl. ¶ 42. These chatbots, bearing names such as "Tony
13   Robbins GPT," "Coach Tony," and "Talk to Tony Robbins," are deliberately
14   crafted to mimic Robbins' voice, style, and proprietary teachings. Compl. ¶¶ 42-53.

15   Defendants' infringing chatbots mislead consumers into believing they are
16   interacting with Robbins himself, or with a service and information (including
17   answers and advice) authorized by Robbins and Plaintiffs. Compl. ¶¶ 39, 41, 43,
18   88. The GPTs explicitly invoke Robbins' signature programs, methods, and
19   coaching systems, including the Robbins-Madanes method and Date With Destiny
20   program, thereby trading on Plaintiffs' goodwill and misappropriating proprietary
21   content. Compl. ¶¶ 5, 45, 75, 80, 81, 82.

22   By promoting, offering and selling access to these chatbots, Defendants
23   divert consumers away from authorized Robbins seminars, courses, and licensed
24   products, including RRI's own Tony Robbins AI Chatbot, instead directing them to
25   deficient, questionable, knockoff versions of Robbins' insights. Compl. ¶¶ 55, 60,
26   67, 97. This conduct not only causes financial harm to Plaintiffs but also dilutes the
27   Robbins Brand and damages its reputation. Compl. ¶¶ 60, 66, 68, 69, 84.
28   Defendants prominently use Robbins' NIL and Plaintiffs' registered Marks

4

throughout its Website to attract users and incentivize subscriptions. Compl. ¶¶ 51, 56, 75. Defendants' entire marketing strategy depends on the false and misleading suggestion that Robbins endorses, participates in, or authorizes these (knock-off, illegitimate) AI chatbot services. Compl. ¶¶ 56, 65, 68.

Plaintiffs issued multiple pre-litigation cease-and-desist letters to Defendants, demanding that it remove and discontinue its unauthorized Robbins chatbot replicas. Compl. ¶9. Defendants have refused to comply, and the infringing chatbots remain publicly accessible, offered and exploited on YesChat.ai. *See id.; and see* Declaration of Evan N. Spiegel, Esq., ("Spiegel Decl."), ¶1-4, Exhs. A-C.

Defendants' ongoing conduct is willful, deliberate, and in reckless disregard of Plaintiffs' rights. Compl. ¶¶ 7, 64, 70, 82, 90. By continuing to profit from the unauthorized exploitation of Robbins' NIL and Plaintiffs' Marks, Defendants have caused and continue to cause significant financial and reputational harm, leaving Plaintiffs with no recourse but to seek relief from this Court. Compl. ¶¶ 55, 60.

## III. **LEGAL ARGUMENT**

### A. **The Court Has Personal Jurisdiction Over Defendants**

Before entering default judgment, the Court must assure itself that it has personal jurisdiction over the defendant. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). In cases involving intentional torts and intellectual property misappropriation, the Ninth Circuit applies the "purposeful direction" framework derived from *Calder v. Jones*, 465 U.S. 783 (1984). *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802–05 (9th Cir. 2004). Under this test, purposeful direction exists where a defendant: (1) commits an intentional act, (2) expressly aimed at the forum state, and (3) causes harm the defendant knows is likely to be suffered in the forum. *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015).

Here, each element is met:

<u>Intentional Act</u>. Defendants intentionally created, promoted, and monetized, on their jointly operated for-profit Website, AI chatbot replicas explicitly labeled

5

with "Tony Robbins" and "Anthony Robbins" and designed to impersonate Robbins' likeness, voice, and proprietary coaching methods. These were not accidental or incidental references; they were deliberate uses of Plaintiffs' Marks and Robbins' NIL designed to pass off Defendants' chatbots and services as authorized Robbins content.

    <u>Express Aiming at the Forum</u>. Defendants' conduct was expressly aimed at California, where Plaintiffs RRI and TRL maintain their personal places of business – their corporate offices and base of operations. Defendants' unauthorized chatbots directly targeted CA consumers by trading on the goodwill of a California-based brand, diluting Plaintiffs' Marks, and diverting consumers from Plaintiffs' licensed and authorized programs and services. *See Calder*, 465 U.S. at 789–90 (finding personal jurisdiction in CA where defamatory article was aimed at CA plaintiff and caused reputational harm in CA); *Schwarzenegger*, 374 F.3d at 807 (effects test satisfied where defendant's conduct was expressly aimed at CA celebrity).

    <u>Foreseeable Harm in California</u>. Defendants knew, or should have known, that misappropriating Robbins' name, likeness, and trademarks would cause injury in California, where Plaintiffs' brand value, consumer base, and professional reputation are centered. *See* Compl. ¶ 16. The injury here — loss of customers, harm to goodwill, and brand dilution — was suffered in California, and Defendants' continued operation of the infringing chatbots despite cease-and-desist letters and the advancement of the instant litigation demonstrates willfulness. *See Mavrix Photo, Inc. v. Brand Techs., Inc*., 647 F.3d 1218, 1230 (9th Cir. 2011) (jurisdiction proper where defendant's website exploited California celebrity photos, knowing harm would be felt in California).

    Because Defendants purposefully directed their intentional misconduct at California, and Plaintiffs' injuries were suffered here, this Court's exercise of personal jurisdiction is consistent with due process. *See Picot*, 780 F.3d at 1212; *Calder,* 465 U.S. at 789–90.

Finally, the exercise of jurisdiction in this case is reasonable. Defendants have deliberately exploited the California market by misappropriating the identity, brand, and intellectual property rights held by Plaintiffs, whose principal places of business are located in this District. California has a manifest interest in providing a forum for its resident corporations whose intellectual property, publicity rights, and goodwill have been infringed. *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998) (finding jurisdiction over defendant who targeted business with principal place of business in California because the effect of the tort was felt in California).

Accordingly, the requirements of due process are satisfied, and the Court has specific personal jurisdiction over Defendants in this matter.

### B. Default Judgment Is Proper Against Defendants Based On Their Non-Appearances

Federal Rule of Civil Procedure ("F.R.C.P.") 55(b) provides for a court ordered default judgment following entry of default by the clerk under Rule 55(a). *See* F.R.C.P. 55(b)(2); *PepsiCo Inc. v. Cal. Security Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A default judgment is available where the plaintiff establishes: (i) defendant has been served with the summons and complaint and default was entered for their failure to appear; (ii) defendant is neither a minor nor an incompetent person; (iii) defendant is not in military service or not otherwise subject to the Soldiers and Sailors Relief Act of 1940; and (iv) if defendant has appeared in the action and/or if the amount claimed in a judgment by default is unliquidated, that defendant was provided with notice of the application for default judgment and of the amount requested. *See, e.g.*, 50 U.S.C. § 521; F.R.C.P. 55; *Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1070 (D. Ariz. 2006).

All of these requirements are satisfied in the instant action.

1.    ***Defendants Were Each Served With the Summons and Complaint and Default Was Entered.***

The Complaint in this action was filed June 26, 2025.  The Summons as to Defendant InnoLeap AI LLC and Mira Muse LLC was issued on June 27, 2025.

Defendant InnoLeap was served with the Summons and Complaint (and all other applicable initial pleadings, forms, and notices) on July 1, 2025 via personal service on its registered agent designated to accept service of process. *See* Spiegel Decl., ¶4. For the Court's convenience, attached as Exhibit D to the Spiegel Declaration is a true and correct copy of the Proof of Service of Summons and Complaint by personal service on InnoLeap, filed on July 03, 2025. *See id*.; ECF No. 6.  Pursuant to F.R.C.P. Rule 55(a), Plaintiffs filed a Request for Entry of Default against InnoLeap on July 30, 2025. *See* ECF No. 8.

Defendant Mira Muse was served with the Summons and Complaint (and all other applicable initial pleadings, forms, and notices) on June 30, 2025 via personal service on its registered agent designated to accept service of process. *See* accompanying Spiegel Decl., ¶5. For the Court's convenience, attached as Exhibit E to the Spiegel Declaration is a true and correct copy of the Proof of Service of Summons and Complaint by personal service on Mira Muse, filed on July 10, 2025. *See id*.; ECF No. 7. Pursuant to F.R.C.P. Rule 55(a), Plaintiffs filed a Request for Entry of Default against Mira Muse on July 30, 2025. *See* ECF No. 9.

On August 1, 2025, the Clerk of Court entered the default as to both Defendants. *See* ECF No. 10. Spiegel Decl., ¶6.

2.    ***Defendant(s) Is Not A Minor, Not Incompetent, And Not in Military Service.***

Defendants are each a corporate entity. As such, each Defendant is not a minor, not an incompetent person, and not subject to the Servicemembers Civil Relief Act, 50 U.S.C. § 521, or any related protections afforded to individuals in military service. Spiegel Decl., ¶7.

NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT    **25cv01637**

3. ***Defendant Has Failed to Appear and Shall Receive Notice of the Amounts Requested.***

Because Defendants have not appeared, no notice of this Motion is required under Fed. R. Civ. P. 55(b)(2). However, in an abundance of caution and because Plaintiffs are seeking statutory damages, Plaintiffs are concurrently serving Defendants with a copy of this Motion and the amount requested. Spiegel Decl., ¶8.

## C. <u>THE *EITEL* FACTORS FAVOR ENTERING DEFUALT JUDGMENT AGAINST DEFENDANTS</u>

Entry of default judgment lies within the trial court's sound discretion. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Courts have recognized that, in applying this discretionary standard, "default judgments are more often granted than denied." *PepsiCo, Inc. v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999).

In the Ninth Circuit, district courts evaluate motions for default judgment under the factors articulated in *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986): (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the strong policy favoring decisions on the merits.

Once default is entered, the factual allegations of the complaint -- other than those relating to damages -- are deemed admitted by the defaulting party. *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d at 920 (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977); Fed.R.Civ.P. 8(b)(6)).

Here, each *Eitel* factor weighs in favor of entering default judgment.

### 1. ***Plaintiffs Will Be Prejudiced If Default Judgment Is Not Entered.***

The first *Eitel* factor weighs in favor of default judgment because Plaintiffs will be severely prejudiced absent such relief. Defendants, partners in and joint

9

owners and operators of the Website and their chatbot offerings, have each failed to appear, answer, or otherwise defend this action, and the Clerk has entered default. *See* ECF No. 10. Where, as here, a defendant ignores the litigation, "[i]f the Court does not enter a default judgment, it will allow Defendant to avoid liability by not responding to Plaintiff's claims," and Plaintiffs "will likely be without other recourse for recovery." *Amini Innovation Corp. v. KTY Int'l Mktg.*, 768 F. Supp. 2d 1049, 1054 (C.D. Cal. 2011); *see also Cal. Sec. Cans v. Union Safe Deposit Bank*, 238 F. Supp. 2d 1137, 1177 (E.D. Cal. 2002).

Plaintiffs face ongoing and escalating harm because Defendants continue to operate the <YesChat.ai> Website, where multiple unauthorized "Tony Robbins" chatbot replicas remain actively promoted and publicly available, both for use by free trials and through paid subscription service. These infringing bots divert consumers away from Plaintiffs' legitimate, licensed Robbins programs and coaching services, dilute the Robbins Brand, and mislead the public into believing Robbins endorses or is affiliated with Defendants, their Website and their products and services, including Robbins branded Chatbots. Absent a default judgment, Plaintiffs will have no means to stop Defendants' willful exploitation of Robbins' intellectual property and NIL, and the damage to Plaintiffs' brand and goodwill will continue unchecked. *See e.g.*, *Elektra Ent. Grp. Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005) (finding prejudice where denial of default judgment "would be denied the right to judicial resolution" of claims that defendant infringed plaintiff's intellectual property rights).

Moreover, because Plaintiffs have stated valid and well-supported causes of action against Defendants, Plaintiffs "undeniably would be prejudiced absent the entry of permanent injunctive relief through default judgment," and such prejudice can only be avoided by entry of an order granting the requested relief. *PepsiCo, Inc. v. Distribuidora La Matagalpa, Inc.*, 510 F. Supp. 2d 1110, 1116 (S.D. Fla. 2007). Plaintiff therefore seeks entry of an order enjoining Defendants from using,

10

reproducing, or otherwise exploiting Plaintiffs' trademarks, service marks, and Robbins' NIL, including but not limited to the "ANTHONY ROBBINS" and "TONY ROBBINS" Marks, the Robbins Brand, and the Robbins NIL in connection with the promotion, distribution, or sale of any products or services.

### 2. *Plaintiffs' Claims Are Meritorious and Are Sufficiently Pled.*

"The second and third *Eitel* factors assess the substantive merit of plaintiff's claim and the sufficiency of its pleadings." *Landstar Ranger, Inc. v. Parth Enters., Inc.,* 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010). "To warrant default judgment, the allegations in the Complaint must be sufficient to state a claim upon which Plaintiff can recover." *Coach Servs., Inc. v. YNM, Inc.*, No. CV 10–02326 JST, 2011 WL 1752091, at *3 (C.D. Cal. 2011) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388-89 (9th Cir. 1978)). "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Grp.,* 559 F.2d 557, 560 (9th Cir.1977). In order to weigh these two factors, the Court is to review Plaintiff's claims and allegations as set forth in the Complaint. *See* ECF No. 1.

Here, as referenced herein and as more fully set forth in the Complaint, Plaintiffs have more than adequately pled causes of action against Defendants, and each of them, for (1) Trademark Infringement (15 U.S.C. §§ 1114(1)(a) and (b) and 1125(a)); (2) Statutory Misappropriation of Name and Likeness (Cal. Civ. Code §3344); (3) Common Law Misappropriation of Name and Likeness; (4) False Designation of Origin (15 U.S.C. § 1125(a)); and (5) Unfair Competition.

### a) Plaintiffs Adequately Alleged All Elements Of Their Trademark Infringement and False Designation of Origin Claims.

To properly plead claims for trademark infringement and false designation of origin claims, Plaintiffs must plead: (1) that they have a protectable ownership interest in the mark(s); and (2) that Defendant subsequently and without

---

11

authorization used a similar mark likely to cause consumer confusion, deception, or mistake. *Phillip Morris USA Inc. v. Shalabi*, 352 F.Supp.2d 1067, 1072 (C.D. Cal.2004) (the essential elements of claims for trademark infringement and false designation of origin are identical); *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1047 n. 8 (9th Cir. 1999) (holding the same legal standard applies to sections 32(1) and 43(a) of the Lanham Act).

Plaintiffs' Complaint properly alleges the necessary elements for their federal and common law trademark infringement claims and false designation of origin of claim regarding its RRI Trademarks and TRL Trademarks. Compl. ¶¶ 3, 26, 27-28, 30, 31, 32, 44, 53, 56, 61, 63, 64, 86, 87, 88, 93, 94, 97, and 98. For instance, Plaintiffs allege that:

- RRI is the sole owner of all federal and common law rights to the at-issue RRI Trademarks. Compl. ¶¶ 26, 27-28, 30, Exh. B.  TRL is the sole owner of all federal and common law rights to the at-issue TRL Trademarks. Compl. ¶¶ 3, 26, 31, Exh. C. These marks are distinctive, and have continually been used in commerce by Plaintiff. Compl. ¶¶  32, 66, 86.

- Defendant's (each of their) use of the three at-issue RRI and TRL Trademarks is unauthorized. Compl. ¶¶ 1, 2, 7, 44, 53, 56, 61, 63, 64, 87.

- Defendant's (each of their) unauthorized use of the three at-issue RRI and TRL Trademarks "is likely to cause mistake and confusion and to deceive," which has caused monetary damages to Plaintiffs and irreparable harm to Plaintiffs' brand and products. Compl. ¶¶ 54, 55, 68, 69, 88, 93, 94, 97, 98.

Accepting these factual allegations as true, "as the court must in deciding an application for default judgment," (*Coach Servs.*, 2011 WL 1752091 at *3), Plaintiffs have successfully pled the elements for federal and common law trademark infringement and use of false designations of origin. *See* F.R.C.P. 8(b). The second and third *Eitel* factors thus weigh in favor of default judgment as to these claims.

**b)    Plaintiffs Adequately Alleged All Elements of Their Statutory and Common Law Misappropriation of Name and Likeness Claims**

Plaintiffs have adequately pled facts establishing each element of their statutory and common law misappropriation claims under California law.

California Civil Code § 3344 prohibits the knowing use of another's "name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases," without consent. Likewise, California common law protects against the unauthorized commercial exploitation of an individual's identity where (1) the defendant used the plaintiff's identity; (2) the appropriation was to the defendant's advantage, commercially or otherwise; (3) the plaintiff did not consent; and (4) the use caused injury. *See Maxwell v. Dolezal*, 231 Cal.App.4th 93, 97 (2014).

Here, Plaintiffs alleged — and Defendants, by default, each admit —that Defendants created and promoted multiple (at least 11 different) AI chatbot replicas using the Robbins Marks and explicitly labeled with Robbins' name and designed to mimic his voice, likeness, style, and proprietary teachings. *See* Compl. ¶¶ 1, 37, 74, 81, 87. These chatbots were marketed as "Tony Robbins GPT" and similar titles incorporating the three Robbins Marks and Robbins NIL, and were offered through subscription tiers on Defendants' jointly owned and operated Website designed to generate revenue for Defendants. Compl. ¶¶ 40-43. Plaintiffs did not consent to this use, and Defendants have continued to operate the infringing chatbots despite receiving multiple pre-litigation cease-and-desist demands, and despite service of the Summons & Complaint in this action. Compl. ¶¶ 9, 54, 55, 63, 65, 68, 69, 88.

These allegations satisfy every element of Plaintiffs' statutory and common law misappropriation claims. Defendants have used Robbins' identity (including his name, likeness, voice, and persona), for its/their own commercial gain, without authorization, thereby causing direct harm to Plaintiffs' goodwill, brand value, and

1   revenue streams. Courts routinely find such allegations sufficient to establish

2   liability where, as here, defendants knowingly exploit the identity of a celebrity or

3   public figure for profit. *See Abdul-Jabbar v. Gen. Motors Corp.,* 85 F.3d 407, 413–

4   14 (9th Cir. 1996) (use of Kareem Abdul-Jabbar's name in advertisement without

5   consent established right of publicity violation).

6       Accordingly, the merits and sufficiency factors weigh heavily in favor of

7   default judgment on Plaintiffs' misappropriation claims.

8           **c)    Plaintiffs Adequately Alleged All Elements of Their Common Law Unfair Competition Claim**

9

10      The *Eitel* factors also favor default judgment because Plaintiffs have

11  adequately pled facts supporting their claim for common law unfair competition.

12  Under California law, the common law tort of unfair competition is generally

13  "synonymous with the act of 'passing off' one's goods as those of another."

14  *Simplehuman, LLC v. Volume Distributors, Inc.*, No. LACV2302219JAKASX,

15  2024 WL 1813511, at *4 (C.D. Cal. Feb. 15, 2024) (citing *Bank of the West v.

16  Superior Court*, 2 Cal. 4th 1254, 1263 (1992)). A plaintiff states a claim by alleging

17  (1) the defendant engaged in "passing off" or related deceptive conduct, and (2)

18  resulting harm to the plaintiff. The common law tort focuses primarily on acts

19  designed to deceive the public into believing that the defendant's products or

20  services are authorized, sponsored, or otherwise connected with the

21  plaintiff. *Century 21 Real Estate Corp. v. Sandlin,* 846 F.2d 1175, 1178 (9th

22  Cir.1988) (citation omitted).

23      Here, Plaintiffs alleged — and Defendants, by default, each admit — that

24  Defendants created and promoted multiple chatbot replicas using the Robbins'

25  Marks and labeled with Robbins' name and presented them in a manner intended to

26  pass them off as authentic, authorized Robbins products. Compl. ¶¶ 7, 35, 39, 68.

27  These chatbots were marketed as "Tony Robbins GPT," "Coach Tony," and "Talk

28  to Tony Robbins," among others, and were promoted to the public as Robbins'

14

Branded services and as if they provided genuine Robbins content, coaching, and teachings. Compl. ¶¶ 40-43. Defendants' use of Robbins' name, persona, and proprietary methods is designed to deceive consumers into believing that Robbins or Plaintiffs authorized or endorsed these chatbots. Compl. ¶¶ 52, 54, 65, 98.

As Plaintiffs have clearly alleged, Defendants' conduct constitutes the classic form of passing off prohibited under California common law unfair competition. Compl. ¶¶ 95-99. By operating their YesChat.ai Website and charging subscription fees for access to the infringing chatbots, Defendants have diverted consumers from Plaintiffs' legitimate services, capitalized on Robbins' goodwill, and caused injury to Plaintiffs' reputation and brand value. Compl. ¶¶ 55, 60, 67-69, 74, 84, 94, 97. Courts routinely find unfair competition where defendants market counterfeit or unauthorized goods that falsely suggest a connection to a well-known brand. *See, e.g., Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.,* 944 F.2d 1446, 1457 (9th Cir.1991) (citing *Century 21,* 846 F.2d at 1178 (holding that the "ultimate test" is "whether the public is likely to be deceived or confused by the similarity of the marks" and because there was a likelihood of confusion among consumers between the Oscar and the Star award, district court's dismissal of the unfair competition claim was reversed) (quotations omitted).

Because Plaintiffs' Complaint adequately alleged each element of common law unfair competition, and Defendants, and each of them, have defaulted, liability on this claim is established. This factor weighs in favor of default judgment.

### d)    The Damages Sought by Plaintiffs Favor Default Judgment

For the fourth Eitel factor, "the court must consider the amount of money at stake in relation to the seriousness of [the d]efendant's conduct." *Cal. Sec. Cans v. Union Safe Deposit Bank*, 238 F. Supp. 2d 1137, 1176 (E.D. Cal. 2002). If the requested sum is "reasonably proportionate to the harm caused by the defendant's actions, properly documented, and contractually justified, then default judgment is

1    warranted." *ACS Recovery Servs., Inc. v. Kaplan*, No. CV 09-01304 JSW, 2010 WL
2    144816, at *6 (N.D. Cal. Jan. 11, 2010).

3        Here, Defendants' willful infringement of Plaintiffs' Marks and unauthorized
4    exploitation of Robbins' NIL justifies Plaintiffs' request for damages along with
5    injunctive relief and attorneys' fees. Defendants deliberately created, promoted, and
6    profited from multiple (at least 11) different chatbot replicas labeled with Robbins'
7    name and designed to impersonate his likeness, teachings, and proprietary coaching
8    frameworks. *See* Compl. ¶¶ 3, 26, 27-28, 30, 31, 32, 44, 53, 56, 61, 63, 64, 86, 87,
9    88, 93, 94, 97, and 98. Such conduct was not accidental; it was intentional and
10   designed to mislead consumers into believing Robbins endorsed or was affiliated
11   with Defendants' Website, charbots and subscription services.

12       Here, the damages sought are proportionate to the seriousness of Defendants'
13   willful and ongoing infringement. Plaintiffs seek compensatory damages in an
14   amount not less than Fifty-Five Million Dollars ($55,000,000) -- comprised of
15   $5,000,000 per infringing Robbins AI Chatbot replica, x11. The reasonableness of
16   the amount of damages calculated per infringement is supported by the
17   accompanying declarations from Levine and Babla, establishing the significant
18   losses attributable to Defendants' conduct, including fair-market value of an
19   authorized license, and lost revenues, diverted customers, and measurable harm to
20   Plaintiffs' goodwill and brand equity. Levine Decl., ¶¶3-7; Babla Decl., ¶¶5-12.
21   Plaintiffs also seek disgorgement of Defendants' profits derived from monetizing
22   unauthorized "Tony Robbins" chatbot replicas through paid subscription tiers. Such
23   relief is expressly authorized by both the Lanham Act and California's right of
24   publicity statute. *See* 15 U.S.C. § 1117(a); Cal. Civ. Code § 3344(a).

25       In the alternative, should the Court find statutory damages more appropriate
26   in the default judgment context, Plaintiffs elect statutory damages in the amount of
27   Six Million Dollars ($6,000,000) -- comprised of $2,000,000 per mark
28   infringement, x3 USP&TO registered marks -- pursuant to 15 U.S.C. § 1117(c) and

Cal. Civ. Code §§ 3344, 3344.1. Levine Decl., ¶¶4-7. Defendants' infringement was intentional and willful, as demonstrated by its continued operation of the infringing chatbot replicas even after receiving cease-and-desist letters and even after the service of this action. Courts routinely award substantial statutory damages in such circumstances. *See, e.g.*, *Philip Morris USA, Inc. v. Castworld Prod., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003) (awarding $2,000,000 for willful trademark infringement in default); *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1060 (N.D. Cal. 2010) (awarding $4.9 million in damages on default judgment for copyright, trademark, and related claims). Plaintiffs' statutory damages request is grounded in the scope of Defendants' misconduct, including at least 11 identified infringing chatbot replicas marketed under the Robbins name and Marks, which — at the statutory maximum of $2,000,000 per mark for willful infringement under 15 U.S.C. § 1117(c) and $750 per unauthorized use under Cal. Civ. Code § 3344 — justifies a multimillion-dollar award and supports the reasonableness of the elected figure.

Accordingly, the damages sought — whether measured by Plaintiffs' actual losses and Defendants' profits or by statutory damages — are reasonably proportionate to the harm caused and justified by Defendants' egregious, knowing and willful misconduct. This factor strongly favors entry of default judgment.

Given the scope of Defendants' conduct, the continued operation of the infringing chatbots despite cease-and-desist demands, and Defendants' complete failure to appear, Plaintiffs' damages request is proportionate and justified. This factor therefore weighs in favor of granting default judgment.

### e)    No Dispute Exists As To Material Facts

Plaintiff's well-pleaded Complaint eliminates any possibility of dispute as to material facts. "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *See TeleVideo*, 826 F.2d at 917-18 (affirming the grant of default judgment).

17

As established above, Plaintiffs, in their Complaint, allege all facts necessary to establish their claims (Compl. ¶¶ 16-74) and the Clerk of Court entered default against Defendants. Dkt. No. 10. Defendants failed and refused to respond to the Complaint, and therefore no dispute has been raised regarding any material fact included in the Complaint against Defendants. Spiegel Decl., ¶4-6, 8. As a result, this factor favors Plaintiffs' request for entry of default judgment. *See Wecosign, Inc. v. IFG Holdings, Inc*., 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012) (fifth *Eitel* factor met because of defendants' "early participation in this matter and subsequent failure to contest Plaintiff's claims").

### 3. *Defendants' Failure to Respond Is Not Attributable to Excusable Neglect*

As for the sixth *Eitel* factor, Defendants', and each of their, failure to respond to the Summons and Complaint is not attributable to excusable neglect. *See Adobe Sys. Inc. v. Kern*, No. C 09-1076 CW (JL), 2009 WL 5218005, at *6 (N.D. Cal. Nov. 24, 2009) (finding the sixth *Eitel* factor favored granting default judgment where defendant was served with the summons and complaint but failed to respond); *Williams-Sonoma, Inc. v. Friendfinder, Inc*., 2007 WL 4973848, *8 (N.D. Cal. 2007) (finding little possibility for excusable neglect where defendant did not respond to a validly served complaint). Defendants were each properly served with the Summons and Complaint – Mira Muse on June 30, 2025 and InnoLeap on July 1, 2025. Spiegel Decl., ¶¶4-5. Defendants have each failed to appear or respond. The lack of response is not attributable to lack of notice or excusable neglect. Rather, it is consistent with Defendants' deliberate strategy of operating its unlawful chatbot business in a manner designed to profit from U.S. consumers while attempting to evade accountability in U.S. courts.

Moreover, prior to service of the Complaint, Defendants were sent pre-litigation demand letters outlining Plaintiffs' claims. Spiegel Decl., ¶3, Exhs. A-C. Defendants failed and refused to respond to those pre-litigation demand letters or

18

1    alternatively to discontinue all use of Robbins' trademarks, Brand or marketing of
2    the fraudulent Robbins chatbot replicas. Defendants could have restricted the
3    damages caused to Plaintiffs but refused, and continued in their continued their
4    willful infringement and tortious conduct.

5        Defendants have been given every opportunity to respond to the Complaint
6    and to resolve this action, but have refused to do so. It therefore "is unlikely that
7    Defendant['s] failure to answer and the resulting default was the result of excusable
8    neglect." *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F.Supp.2d 995,
9    1005 (N.D. Cal.2001) (concluding no excusable neglect because defendants "were
10   properly served with the Complaint, the notice of entry of default, as well as the
11   papers in support of the instant motion" for default judgment). Defendants have
12   been avoiding RRI and this Court, and can show no excusable neglect. *Amini*
13   *Innovation Corp.*, 768 F. Supp. 2d at 1056. Accordingly, as both this action and
14   Defendants' defaults resulted from willful failure to respond, the sixth *Eitel* factor
15   therefore favors entering default judgment.

16       **4.    *The Policy Favoring a Decision on the Merits.***

17       "[T]he preference to decide cases on the merits does not preclude a court
18   from granting default judgment," as the "mere existence of Rule 55(b) "indicates
19   that this preference, standing alone, is not dispositive." *Pepsico, Inc. v. California*
20   *Security Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) (citation omitted).
21   Moreover, Defendants' failure to answer or otherwise respond to the complaint
22   "makes a decision on the merits impractical, if not impossible." *Id*.  Upon entry of
23   default, the factual allegations in Plaintiff's complaint, except those relating to
24   damages, are deemed admitted. *See, Televideo Sys., Inc.,* 826 F.2d at 917-18;
25   *Geddes,* 559 F.2d at 560. And Defendants have each had an adequate opportunity
26   to defend itself in this action or otherwise respond to Plaintiffs' demands in this
27   action. The Court therefore is not precluded from entering default judgment against
28   Defendants based on the detailed allegations set forth in the Complaint.

19

1    In sum, the *Eitel* factors, taken together, weigh in favor of the entry of default

2    judgment against Defendants, and each of them.

3    **IV.    PLAINTIFFS ARE ENTITLED TO THE RELIEF SOUGHT**

4    With default judgment justified, the Court next conducts an inquiry into

5    appropriate relief, including the amount of damages.  Here, Plaintiffs seek an order

6    and awards for, as more fully set forth below: (i) permanent injunctions, and orders

7    requiring Defendants to, but not limited to, disable, remove and destroy infringing

8    chatbot replicas and materials, (ii) an award of Plaintiffs' compensatory damages

9    against Defendants, joint and severally, in the amount of $55,000,000, *or, in the*

10   *alternative*, statutory damages in the amount of $6,000,000, *plus* an award of treble

11   (3x) damages of such damages awarded for Defendant's willful infringement, (iii)

12   an accounting, (iv) disgorgement to Plaintiffs of all profits realized by Defendants

13   as a result of their infringing conduct, and (v) an award of Plaintiffs reasonable

14   attorneys' fees and costs, as more fully set forth herein below.

15   **A.    Injunctive Relief**

16   In an action brought under the Copyright Act and/or Lanham Act, injunctive

17   relief against further copyright and trademark infringement is an appropriate

18   remedy. *See* 17 U.S.C. § 502; 15 U.S.C. § 1116(a); 15 U.S.C. § 1125(c)(1) and (5)).

19   Courts grant injunctive relief even in situations of default. *Amini Innovation Corp*.,

20   768 F. Supp. 2d at 1057, citing *Lifted Research Group, Inc. v. Salem*, Case No. C–

21   08–4497 SC, 2009 WL 1371416 at *1 (N.D. Cal. May 15, 2009) and *Jackson v.*

22   *Sturkie*, 255 F.Supp.2d 1096, 1103 (N.D. Cal.2003).

23   Absent issuance of injunctive relief here, Plaintiffs will suffer irreparable

24   harm and there is a lack of adequate alternative remedies at law. Compl. ¶¶ 54, 55,

25   68, 69, 88, 93, 94, 97, 98. Without the Court's issuance of an injunction, the

26   continued misuse of Plaintiffs' Marks, name and likeness by Defendants would

27   damage the goodwill in which Plaintiffs have greatly invested in their intellectual

28   property. *Id*. Damages from future violations of RRI Copyrights and Plaintiffs'

20

Marks would be difficult to value due to the unknown impact on RRI's goodwill. *Id.* The balance of hardships also weighs in Plaintiffs' favor. Defendants face no hardship in refraining from its infringement of the RRI Copyrights and Plaintiffs' Marks, whereas Plaintiffs face loss of royalties and damage to their reputation. Compl. ¶¶ 54, 64.  Plaintiffs are thus entitled to injunctive relief.

Specifically, pursuant to statute, Plaintiffs request the Court enter an order permanently enjoining and restraining Defendants, their agents, employees, representatives, partners, joint venturers, online store and website platform and/or host providers, and anyone acting on behalf of, or in concert with Defendants, from:

      a. copying, reproducing, manufacturing, importing, delivering, selling, distributing, marketing, displaying, advertising or promoting, any product and/or service that incorporates or is marketed in conjunction with or by using, displaying or embodying any of the Robbins' Marks (i.e., including "Tony Robbins" and "Anthony Robbins"

      b. copying, reproducing, manufacturing, importing, delivering, selling, distributing, marketing, displaying, advertising or promoting, any product and/or service that incorporates or is marketed in conjunction with or by using, displaying or embodying the Robbins NIL (i.e., Anthony "Tony" Robbins' name, image, likeness and/or voice);

      c. representing or implying, directly or indirectly, to customers, or any potential customers or online users/viewers of Defendants' YesChat.AI website (or any other website, online store, App, and/or platform) that Defendants' products and/or services originate with or are sponsored, endorsed, or licensed by, or are otherwise associated or affiliated with Plaintiffs and/or Robbins, and from using, reproducing, or otherwise exploiting the Robbins

21

Marks, Brand and/or Robbins NIL, in connection with the promotion, distribution, or sale of any products and/or services;

d. requiring Defendants to disable, remove and destroy – including, but not limited, from, on or available through their Website and any apps, stores, social media and/or any other sites, outlets or platforms that they own, operate or control -- all infringing chatbots, chatbot replicas, websites, urls and links, website listings, digital files, promotional materials, and any other content that incorporates or misappropriates the Robbins Marks, the Robbins Brand, or Robbins' NIL.

### B. <u>Damages</u>

Plaintiffs are entitled to recover either compensatory damages and Defendants' profits or, in the alternative, statutory damages. *See* 15 U.S.C. § 1117(a)–(c); Cal. Civ. Code §§ 3344, 3344.1.

Here, Plaintiffs seek (i) actual compensatory damages according to proof, including lost revenues (including for FMV of licenses), diverted customers, and harm to goodwill and brand equity, in an amount no less than Fifty-Five Million Dollars ($55,000,000), against Defendants, joint and severally -- calculated and comprised of reasonable fair market value of Five Million per infringing Robbins AI Chatbot replica, times-11 separately identified, unauthorized, unlicensed Robbins chatbot replicas available through Defendants' YesChat.Ai subscription service site, or, if the Court determines that, notwithstanding the accompanying declarations and evidence, actual damages are not adequately supported, then, *in the alternative*, (ii) statutory damages, in the amount Six-Million Dollars ($6,000,000) Million Dollars -- calculated and comprised of statutory damages of $2,000,000 <u>per</u> Robbins Mark violated, times-3 registered marks, pursuant to 15 U.S.C. § 1117(c) and/or CA Civil Code §§ 3344, 3344.1 *See* Compl. ¶¶ 5–9, 40–44, 53–61; Babla Decl., ¶¶5-12; Levine Decl., ¶¶2-7. Plaintiffs further seek an

22

1  award of treble (3x) damages of the amount of such compensatory or statutory

2  damages awarded, pursuant to 15 U.S.C. § 1117(b), against Defendants.

3      Under the Lanham Act, courts may award statutory damages of up to

4  $2,000,000 per counterfeit mark, per type of goods or services, where infringement

5  is willful. 15 U.S.C. § 1117(c). Similarly, California's right of publicity statute

6  provides for statutory damages of $750 per violation. Cal. Civ. Code § 3344(a).

7  Courts in this Circuit regularly award substantial statutory damages in default

8  judgment cases where defendants have engaged in willful trademark or publicity

9  rights infringement. *See, e.g., Philip Morris USA, Inc. v. Castworld Prod., Inc.*, 219

10 F.R.D. 494, 500 (C.D. Cal. 2003) (awarding $2,000,000 in statutory damages for

11 willful infringement); *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039,

12 1060 (N.D. Cal. 2010) (awarding nearly $5 million in damages for copyright,

13 trademark, and fraud claims).

14     Here, Defendants' willful infringement of Plaintiffs' Marks and

15 misappropriation of Robbins' NIL is egregious. Defendants deliberately created and

16 promoted at least an identified ***11 separate chatbot replicas*** marketed under

17 Robbins' name and designed to impersonate his likeness, voice, and proprietary

18 methods, and infringing ***three*** USP&TO registered Marks. Babla Decl., ¶2-3, 5-12;

19 Levine Decl., ¶¶5-7.  These chatbots include titles such as "Tony Robbins GPT,"

20 "Coach Tony," and "Talk to Tony Robbins," all of which were monetized through

21 Defendants' paid subscription tiers. Compl. ¶¶ 40-43. Defendants received repeated

22 cease-and-desist letters notifying them that their conduct was unlawful and

23 infringing, yet chose to continue their misconduct unabated. Compl. ¶¶ 9, 54, 55,

24 63, 65, 68, 69, 88. And see, Spiegel Decl., ¶3, Exhs A-C.

25     Defendants' conduct is extreme: the infringing chatbots are designed to pass

26 off as authorized Robbins products, diverting consumers away from Plaintiffs'

27 legitimate offerings and diluting the goodwill in Plaintiffs' Marks and brand. By

28 its/their defaults, Defendants each admit that its actions were intentional and

23

without consent. This deliberate scheme to profit from the unauthorized exploitation of Robbins' identity and Plaintiffs' Marks warrants a maximum statutory damages award.

Based on the scope of infringement — including at least 11 unauthorized chatbot replicas via Defendants' YesChat.ai website — and the willful, ongoing, and deliberate nature of Defendants' conduct, Plaintiffs' request for compensatory damages in an amount no less than Fifty-Five Million Dollars ($55,000,000) is supported by proof and proportionate; *or, in the alternative*, Plaintiffs request statutory damages in an amount Six Million Dollars ($6,000,000), *plus* an award of treble damages of damages awarded, consistent with statutory maximums available under both the Lanham Act and CA's right of publicity statute and is justified to compensate Plaintiffs for their losses and to deter future misconduct.

## C.    <u>An Accounting and Disgorgement of Profits</u>

Trial courts have broad equitable discretion in determining proper compensation to holders of valid trademarks. *See Friend v. H.A. Friend & Co.*, 416 F.2d 526, 533 (9th Cir.1969). Trademark infringement plaintiffs may recover (1) defendant's profits, plus treble damages thereof; (2) damages sustained by the plaintiff; and (3) the costs of the action. *See* 15 U.S.C. § 1117(a).

Here, Plaintiffs are owed monies stemming from Defendants' unauthorized use and exploitation of Plaintiffs' Marks. However, Defendants are exclusively in control over the financial information necessary to ascertain the exact amounts owed to Plaintiffs. Accordingly, in order to determine the complete amount of Plaintiffs' damages resulting from Defendants' trademark infringement, Plaintiffs must be allowed to conduct a full and accurate accounting of Defendants' relevant books and records, including records from their online payment processing services.

Once the full amount of Plaintiffs' damages are ascertained through an accounting, Plaintiffs request disgorgement to Plaintiffs of all profits realized by Defendants infringing conduct, and an award of treble damages thereof.

**D.** **Attorney's Fees**

Finally, Plaintiffs asks the Court to award their attorney's fees. Pursuant to 17 U.S.C. § 505, the prevailing parties in a lawsuit (in this case, Plaintiffs) are entitled to recover attorney's fees from the non-prevailing party.

Moreover, the Lanham Act gives the Court discretion to award reasonable attorney's fees in "exceptional cases." *See* 15 U.S.C. § 1117(a). The term "exceptional cases" is generally accepted to mean cases in which trademark infringement is "deliberate and willful." *See Lindy Pen Co. v. Bic Pen Corp*., 982 F.2d 1400, 1409 (9th Cir. 1993) (interpreting the term "exceptional" to apply when "the infringement is malicious, fraudulent, deliberate, or willful."); *Playboy Enters., Inc. v. Baccarat Clothing Co., Inc*., 692 F.2d 1272, 1276 (9th Cir. 1982). Additionally, a case may be deemed "exceptional" and merit an award of attorney's fees under the Lanham Act when a defendant disregards the proceedings and does not appear. *See Taylor Made Golf Co. v. Carsten Sports, Ltd*., 175 F.R.D. 658, 663 (S.D. Cal. 1997) ("Because the defendant has failed to appear, Plaintiff may request an award of reasonable attorney fees in this case."). Defendants' willful infringement and wrongful conduct qualifies this as an "exceptional case".

Plaintiffs request an award of their attorney's fees of One Hundred Forty-Six Thousand Six Hundred Seventy-Five Dollars ($146,675). Spiegel Decl., ¶10.

**V.** **CONCLUSION**

Wherefore, Plaintiffs respectfully request that the Court enter default judgments against Defendants as set forth in the accompanying proposed Judgment, and for such other relief that the Court may deem just and appropriate.

Date: September 3, 2025          LAVELY & SINGER PC

By:   */s/ Evan N. Spiegel*
          EVAN N. SPIEGEL
Attorneys for Plaintiffs

25