**BRIAN G. WOLF (SBN 135257)**
bwolf@lavelysinger.com
**EVAN N. SPIEGEL (SBN 198071)**
espiegel@lavelysinger.com
**CESIE C. ALVAREZ (SBN 355204)**
calvarez@lavelysinger.com
**LAVELY & SINGER P.C.**
2049 Century Park East, Suite 2400
Los Angeles, California 90067-2906
Tel:   (310) 556-3501

Attorneys for Plaintiffs
ROBBINS RESEARCH INTERNATIONAL, INC.,
and TR LEGACY, LLC

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Robbins Research International, Inc.**, a corporation; **TR Legacy, LLC**, a limited liability company,<br><br>       Plaintiffs,<br><br>  v.<br><br>**InnoLeap AI LLC**, a limited liability company; **Mira Muse LLC**, a limited liability company; and DOES 1-10, inclusive,<br><br>       Defendants. | CASE NO.: 25cv1637-GPC-DEB<br>Hon. Gonzalo P. Curiel<br><br>**DECLARATION OF YOGESH BABLA IN SUPPORT OF PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS INNOLEAP AI LLC AND MIRA MUSE LLC**<br><br>Complaint Filed:        June 26, 2025<br>Innoleap AI LLC<br>    Service Effective:   July 1, 2025<br>    L/D to Respond:     July 22, 2025<br>Mira Muse LLC<br>    Service Effective:   June 30, 2025<br>    L/D to Respond:     July 21, 2025<br>Defaults Entered:     Aug 1, 2025 |

1470-380   DECL. OF YOGESH BABLA ISO MTN FOR DEFAULT JUDGMENT          **25cv1637**

I, Yogesh Babla, declare as follows:

1. I am the Chief Financial Officer ("CFO") of plaintiffs Robbins Research International, Inc ("RRI") and TR Legacy, LLC ("TRL"). I have been the CFO of RRI since 2009 and Manager of TRL since 2016. The facts stated herein are stated of my own personal knowledge and, if called and sworn as a witness, I could and would testify competently thereto. This Declaration is submitted in support of Plaintiffs RRI and TRL's Motion for Default Judgment in the referenced action against defendants InnoLeap AI LLC ("InnoLeap") and Mira Muse LLC ("Mira Muse") (collectively, "Defendants").

2. In my position as CFO for RRI and Manager for TRL, I have personal knowledge that Anthony Robbins, also professionally known as Tony Robbins ("Robbins") -- the individual, founder and CEO of RRI and TRL -- is a world-renowned and internationally known, recognized and respected author, peak performance coach and personal and professional development speaker.

3. I have personal knowledge that RRI, by license from Tony Robbins (a world-famous living person), holds (directly and through its related entity TRL) all and exclusive rights in and to both (i) the USP&TO registered marks "TONY ROBBINS" and "ANTHONY ROBBINS" (the Robbins "Mark(s)"), and numerous related trademark registrations incorporating that name and Marks; *and* (ii) the right of publicity, *i.e.*, celebrity name, image, likeness, persona and common-law name mark of Tony Robbins and Anthony Robbins (collectively, the Robbins' "NIL"). The *Tony Robbins* and *Anthony Robbins* brand, including without limitation, Robbins' international best-selling books, literary materials, personal audio tapes, materials, programs, courses, services, seminars, seminar materials, livestreaming and audio-video recordings of his seminars, coaching systems, his podcasts, his digital identity and services, his celebrity name and likeness and the Robbins Marks (collectively, the "Robbins Brand"), are, by ownership and/or exclusive license, marketed through RRI.

4. RRI's official website is displayed at and resolves in association with the TLD Domain Name <TonyRobbins.com> ("RRI Website" and/or Tony Robbins "Website"). RRI is also the registrant of dozens of related TLD domain names, including <AnthonyRobbins.com>, <TonyRobbinsAI.com> and <TonyRobbins.AI>, which url-forwards to the official Tony Robbins Website. RRI promotes and/or makes available its products and services at/on or through the Tony Robbins Website.

5. Robbins, individually and through RRI and TRL, have, for more than four decades, invested substantial time, money, and energy in developing Robbins' respect and prominence in the public eye, and thereby the value of the Robbins' NIL and the related Robbins Brand and Robbins' trademarks and tradenames. As a result of the foregoing, a significant portion of the world-wide public associates the name, the tradenames and the Marks "Tony Robbins" and "Anthony Robbins", with RRI. Robbins' NIL and the Robbins Brand and related Robbins trademarks and tradenames, are well established, and highly valuable. RRI's annual revenues of approximately $150–$200 million are directly tied to the goodwill and market value associated with the Robbins Brand and Robbins' NIL.

6. Robbins' NIL, the Robbins Marks, and the entirety of the Robbins Brand, are carefully protected by RRI in their use and associations. RRI, TRL and Robbins are not in the business of licensing out those rights, exactly for the reason that RRI wants complete control over how the Robbins NIL and Brand is used and associated with products and seminars. RRI does not license Robbins' NIL or Robbins Marks to nor endorse products/services for financial gain to truly third-parties. On rare occasions where such rights have been licensed or granted, RRI and TRL are highly selective and usually only grant authority to commercially use or reference the Robbins' NIL or Robbins Marks as part of a co-branded partnership or venture with a respected associate or business partner of RRI and/or Robbins, and then only upon/with approval of Robbins. In those limited instances

1  when RRI has entered into licenses or joint-venture agreements or made
2  investments in exchange for equity which include a license to use Robbins NIL or
3  Marks and Brand, the value that use of the Robbins NIL and Marks commands in
4  the marketplace would be in the multiple millions, or more, per year and per use.
5  By way of example, I have personal knowledge of the following joint ventures and
6  business transactions which included as part of the consideration, certain rights to
7  commercially use the Robbins NIL, Marks and Brand:

8      (a)    From approximately 2009 to present, RRI entered into a joint
9  venture and licensing arrangement for coaching courses designed for professionals
10 which use Tony Robbins' name and actual content of him from his own events.
11 The venture and strict licensing arrangement, which incorporated use of Robbins'
12 NIL, generated approximately $2-$5 million annually in revenue.

13     (b)    From approximately 2021, a Robbins entity entered into a
14 venture and licensing arrangement in relation to professional development online
15 courses. The venture and strict licensing arrangement, which incorporated use of
16 Robbins' NIL and elements of the Robbins' Brand materials, has generated average
17 annual revenue to Robbins of $4.5 million (with a low of $2 million to a high of $7
18 Million per year).

19     (c)    Robbins recently has entered into a joint venture agreement to
20 market and exploit coaching services specific to Robbins' RPM training system (a
21 time management system) in which RRI is a 50% equity owner. Pro forma
22 projections for revenues from the joint venture, are, for 2026, sales of $56.7
23 million, with $11.1 million paid to RRI, and for 2027, sales of $101.6 million with
24 over $20 million paid to RRI, and with further escalation/increase of sales and of
25 revenues to RRI annually thereafter.

26     7.    Those business arrangements reflect the extraordinary marketplace
27 value of the Robbins endorsement rights, and use of his NIL, Brand and/or Marks,
28 which are otherwise not made available for commercial use by third parties – and

would never be available for any competing product or service that would diminish, dilute or divert from RRI's/Robbins' own products and services and quality or Brand, as has been done by Defendants in this case.

8.  Based on my personal knowledge as the CFO of RRI and my knowledge and review of financial data, and evaluation of actual business transactions and ventures that have taken place, the reasonable royalty value for the use of Robbins' NIL and the Robbins Marks and/or Brand in an endorsement, sponsorship, or product association deal would be, depending upon the products, services and duration of use, at minimum, <u>not less than $2 Million per use and per year, and up to $25 Million per use and per year</u>. This valuation is consistent with the marketplace rates RRI could obtain if it chose to license or co-brand Robbins' NIL and the Robbins Marks for endorsement of high-profile, high-quality, products or services – which would only occur with strict restrictions of use, type and quality of product, and oversight.

9.  In addition to the historical valuation of Robbins' NIL and use of the Robbins Marks, RRI has recently invested heavily in developing and promoting its own "Tony Robbins AI" chatbot product and services. One of the products and services promoted and marketed on the Robbins' Website is its "Tony Robbins AI" Chatbot product, App and subscription services, including at the page <https://www.tonyrobbins.com/programs/tony-ai>. Tony Robbins AI is described on the Website as a "fully interactive experience powered by the proven tools and wisdom of the world's #1 life and business strategist," and providing "instant access to Tony Robbins' mindset, energy, and breakthrough strategies—anytime you need clarity or momentum." Tony Robbins AI is a "revolutionary tool [] trained on decades of Tony's most effective methods—from live events and best-selling books to frameworks like the Wheel of Life and the Gap Map. It speaks in Tony's own voice, delivers personalized answers, and helps you move forward with confidence and purpose." Any other Robbins branded AI Chatbot replica, not

4

through RRI, is unauthorized.

10. To date, RRI has invested approximately $550,000 in development of the Robbins AI Chatbot, with potential additional development costs over the next three years of several Million Dollars. Although still in the initial development/roll-out phase, with most initial use under free trials, the first full five-months of use since the promotional launch of RRI's Robbins AI chatbot has already generated net revenues of approximately $630,000, which projects to a first 12-months net revenue of approximately $1.5 Million. RRI's current projections of net revenues from its Robbins AI chatbot product are, conservatively, $2 Million in year two of the roll-out, $3 Million in year three, and steadily increasing annually thereafter. Based on current models, trends and revenues, the reasonably projected revenue of RRI's Robbins AI Chabot replica -- which has now been misappropriated and usurped by the defendants -- is $3 Million to $5 Million per year.

11. By misappropriating Robbins' NIL and the Robbins Marks to market and sell subscriptions to access to the unauthorized Robbins Chatbot replicas, Defendants have not only diverted consumers away from RRI's legitimate products, but also depreciated the value of RRI's own Robbins AI product, in which (as stated above) RRI has invested substantial monies and time in development and which is expected to generate millions in future revenue. Defendants have unilaterally taken this for themselves for free. In addition, Defendants' misconduct deprives Robbins, TRL and RRI of their ability to control how Robbins' NIL and Robbins' NIL are used and to refuse association with Defendants' inferior and unauthorized Chatbot replica products. Defendants' unauthorized products would be and are a deficient, questionable, low-quality knockoff version that could only falsely purport to provide Robbins' insights, strategies and methods. Any such knockoff Tony Robbins named or referenced AI Chatbot, such as those offered via defendants' YesChat.ai website and platforms, not only causes financial harm to Plaintiffs RRI and TRL, and to Robbins, by

5

diverting consumers away from RRI's legitimate products, and depreciating the value of RRI's own Robbins AI product, but also dilutes the Robbins Brand and Marks and damages their high-quality and valuable reputations. Defendants deprived RRI of the opportunity to say "no" to association with Defendants' peddling of their own competitive, but inferior and questionable, products, and to refuse to be associated with Defendants' company, services, and questionable products.

12. In my opinion, as CFO of RRI, the reasonable fair market value of a license for Defendants' unauthorized use of the Robbins Marks and Robbins' NIL -- as well as extensive unauthorized use of RRI's catalog of Robbins' literary materials and products -- for Defendants' YesChat.ai's Robbins AI chatbot replica services and related promotion, sponsorship and/or endorsement would have been at least <u>$5 Million to $7 Million, per chatbot replica service and use, per year.</u> This valuation is based on both (i) the historical licensing and equity transactions and revenues involving Robbins' NIL and Marks, and (ii) the projected revenue value of RRI's Tony Robbins AI Chatbot offering. Defendant took those rights for itself without compensation, and (iii) diversion from and depreciation of the value of RRI's own offered products and subscription.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 28th of August 2025, in the County of San Diego, State of California.



YOGESH BABLA